UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PAMELA YATES,

        Plaintiff,

 -v-             5:11-CV-1020

CAROLYN W. COLVIN, Acting Commissioner of
Social Security,[1]

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:          OF COUNSEL:

HOWARD D. OLINSKY, ESQ.
Attorney for Plaintiff
300 S. State Street, Suite 520
Syracuse, NY 13202

OFFICE OF REGIONAL GENERAL COUNSEL  SIXTINA FERNANDEZ, ESQ.
SOCIAL SECURITY ADMINISTRATION REGION II
Attorneys for Defendant
26 Federal Plaza Room 3904
New York, NY 10278

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

  This matter is brought pursuant to §§ 205(g) of the Social Security Act, as amended,

42 U.S.C. §§ 405(g) & 1383(c)(3), to review a final determination of the Commissioner of

Social Security denying the plaintiff's claim for Social Security Disability benefits.  The parties

---

[1] Carolyn W. Colvin ("Colvin) became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Colvin is substituted for Michael J. Astrue as the defendant in this action. The Clerk is directed to change the caption to reflect this change.

have filed their briefs, including the Administrative Record on Appeal, and the matter has been submitted for decision without oral argument.

## II. BACKGROUND

Plaintiff Pamela Yates ("plaintiff" or "Yates") filed an application for social security disability benefits on August 2, 2007, claiming a period of disability beginning on November 24, 2005.[2] Her claims were denied on November 8, 2007. She filed a request for a hearing on December 14, 2007, and a hearing by video was held before an Administrative Law Judge ("ALJ") on September 29, 2009. The ALJ rendered a decision on November 17, 2009, denying plaintiff's claim. Plaintiff appealed the ALJ's decision and submitted additional evidence to the Appeals Council. On May 6, 2011, the Appeals Council declined further review of the ALJ's decision. Thus, the ALJ's decision became the final decision of the Commissioner.

## III. DISCUSSION

### A. Standard of Review

The scope of a court's review of the Commissioner's final decision is limited to determinating whether the decision is supported by substantial evidence and the correct legal standards were applied. Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam) (citing Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002)); Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Poupore, 566

---

[2] Plaintiff previously filed an application for disability benefits on May 10, 2004. Her application was denied, and the denial was upheld on appeal in Northern District of New York Civil Action No. 5:06-CV-1406.

F.3d at 305 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S. Ct. 456, 464 (1951)). If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive. Id.

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. Martone, 70 F. Supp. 2d at 148 (citing Johnson, 817 F.2d at 986).

A reviewing court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see Martone, 70 F. Supp. 2d at 148. "Remand is appropriate where there are gaps in the record or further development of the evidence is needed," such as where new, material evidence has become available. 42 U.S.C. § 405(g); Martone, 70 F. Supp. 2d at 148 (citing Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)). A remand for rehearing directing the taking of additional evidence is warranted only if it is shown that there is new, material evidence "'and that there is good cause for the failure to incorporate such evidence into the record'" at the administrative hearing. Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 643-44 (2d Cir. 1983) (quoting 42 U.S.C. § 405(g), as amended in 1980)). Remand may also be appropriate if the Commissioner "misapplies the

law or failed to provide a fair hearing." Id. at 644. However, where the underlying administrative decision is not supported by substantial evidence, reversal is appropriate because there would be no useful purpose in remanding the matter for further proceedings. Id. (reversing and remanding solely for calculation of benefits, subject to determination by the district court of any motion by the agency to remand to consider new evidence); Parker, 626 F.2d at 235 (reversing and remanding solely for calculation and payment of benefits); Simmons v. United States R.R. Ret. Bd., 982 F.2d 49, 57 (2d Cir. 1992) (same); Williams, 859 F.2d at 261 (same).

## B. Disability Determination—The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The Administrative Law Judge ("ALJ") must follow a five step evaluative process in determining whether an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. In the first step the ALJ must determine whether the claimant is engaging in substantial gainful

activity. If the claimant is engaging in substantial gainful activity he is not disabled and he is not entitled to benefits. Id. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful employment, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from a severe impairment, then step three requires that the ALJ determine whether the impairment meets or equals an impairment listed in Appendix 1 of the regulations. Id. §§ 404.1520(d), 416.920(d); see also id. Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

The burden of proof with regard to the first four steps is on the claimant. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Ferraris, 728 F.2d at 584.

If it is determined that claimant cannot perform past relevant work, the burden shifts to the agency for the fifth and final step. Perez, 77 F.3d at 46. This step requires the agency to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g). The regulations provide that "factors such as a claimant's age, education, and previous work experience" should be evaluated to determine whether a claimant has the residual functional capacity to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary." Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt.

P, App. 2). "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity." Poupore, 566 F.3d at 306.

A claimant may seek review of an adverse decision by the ALJ from the Appeals Council. Perez, 77 F.3d at 44. If review is granted, the decision of the Appeals Council is the final decision of the Commissioner. Id. If review is denied, then the final decision is that of the ALJ. Id. The final decision is judicially reviewable pursuant to 42 U.S.C. § 405(g).

### C. Analysis

Yates presents three claims of error by the ALJ. First she contends that the ALJ failed to use the proper legal standard in his application of the treating physician rule. Next, she argues that the ALJ again used an improper legal standard in evaluating her credibility. Finally, according to plaintiff the vocational expert's opinion cannot provide substantial evidence to support the ALJ's determination because the hypothetical presented did not reflect all of her functional limitations.

#### 1. Treating Physician Rule

Where "a treating source's opinion of the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in" the record, it will be given controlling weight. 20 C.F.R. § 404.1527(c)(2); Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013). "'[M]edically acceptable clinical and laboratory diagnostic techniques include consideration of '[a] patient's report of complaints, or history, [a]s an essential diagnostic tool.'" Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (alterations in original) (quoting Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003)). Moreover, "not all expert

opinions rise to the level of evidence that is sufficiently substantial to undermine the opinion of the treating physician." Id. The opinion of an expert who only addresses deficits that claimant did not complain about is not substantial evidence. Id. (citing Green-Younger, 335 F.3d at 107–08). Similarly insubstantial is the opinion of a non-examining consultant who relies upon "a non-physician reporting inconsistent results." Id. (citing Green-Younger, 335 F.3d at 107–08). Likewise, an expert whose opinion is so vague that it is "'useless in evaluating the claimant's residual functional capacity" is not sufficiently substantial to discount the treating physician's opinion. Id. at 128–29 (quoting Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000).

Further, recommendation of a conservative treatment plan by a treating physician does not undermine her opinion about the severity of a claimant's condition. Id. at 129. "The ALJ and the judge may not "'impose[] their [respective] notion[s] that the severity of a physical impairment directly correlates with the instrusiveness of the medical treatment ordered. . . . [A] circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion.'" Id. (alterations in original) (quoting Shaw v. Chater, 221 F.3d 126, 134–35 (2d Cir. 2000)).

Yates had two treating physicians. Dr. Padma Ram was plaintiff's treating family doctor[3] from June 2003 or earlier, through the time of the hearing before the ALJ in September 2009. In June 2003, an x-ray ordered by Dr. Ram showed minor degenerative cervical disc disease. R. at 293. An MRI of her cervical spine, also in June 2003, revealed a central disc herniation at C5/C6. Id. at 292. In August 2003 Dr. Ram noted multiple trigger

---

[3] Many of Dr. Ram's progress notes are for general ills of the type a family doctor would treat, such as ear and sinus infections.

point tenderness.  Id. at 290.  In early 2004, plaintiff continued to complain of stiff neck and limited range of motion.  Id. at 288.  Dr. Ram noted that plaintiff attended physical therapy and a pain clinic throughout 2004.  See, e.g., id. at 286–87, 278, 271.  Despite these treatments, plaintiff continued to suffer from tenderness, trigger points, back pain and neck pain, although no swelling was noted, range of motion was generally full, and reflexes were intact.  See, e.g. id. at 286, 278, 276, 277, 274, 272, 354–55, 218.  At least by June 2004 Dr. Ram diagnosed plaintiff with fibromyalgia as well as degenerative cervical disc disease that was exacerbated by the fibromyalgia.  Id. at 278–79.  Dr. Ram continued to note multiple trigger point tenderness through 2009.  See, e.g., id. at 355, 218.  Also through 2009 plaintiff reported pain, body aches, migraine headaches, fatigue, and sleep continuity disturbances.  See, e.g., id. at 279, 276, 272, 355, 311.  Meanwhile, in 2004 Dr. Ram referred plaintiff to Dr. James Hyla for treatment of her fibromyalgia.

Dr. Hyla, a rheumatologist, treated Yates for fibromyalgia from October 2004 through 2009.  Plaintiff exhibited multiple trigger points, headaches, sleep disturbances, fatigue, and cognitive and memory difficulties.  See, e.g., id, at 199, 201, 200, 202, 204, 380, 279.  Dr. Hyla adjusted plaintiff's medications frequently to achieve as much relief as possible for her.  See id. at 202, 207, 205, 381, 379, 376.  As with Dr. Ram, Dr. Hyla noted no inflammation.  Id. at 204, 377.  Dr. Hyla cautioned plaintiff that although exercise was important in the treatment of fibromyalgia, it was equally important not to overdo.  Id. at 378.

The clinical and laboratory diagnostic techniques, such as MRI, trigger point tenderness on examination, and plaintiff's report of symptoms, are medically acceptable and provide support for both Dr. Ram's and Dr. Hyla's diagnoses.  These techniques also support these treating sources' opinions about the severity of plaintiff's symptoms.  Therefore, the

ALJ must give the treating physicians' opinions controlling weight unless they are "inconsistent with the other substantial evidence in" the record. See 20 C.F.R. § 040.1527(c)(2).

According to the ALJ, he rejected Dr. Ram's opinions because they were not supported by her "normal clinical and other objective findings." R. at 28. Although not discussed in the portion of his decision rejecting Dr. Ram's opinions, presumably these allegedly inconsistent findings were "full reflexes bilaterally, walk[ing] smoothly and evenly with a well-balanced gait, and appear[ing] comfortable and cooperative," which he mentioned in evaluating plaintiff's credibility. Id. at 25.

He rejected Dr. Hyla's opinions on the severity of Yates's impairments because of the same reasons he rejected Dr. Ram's opinions, that is, lack of clinical findings of "significant abnormalities." Id. at 28–29. The ALJ stated that Dr. Hyla found no joint inflammation and his urgings to plaintiff to exercise more had met with some success as reasons for rejecting Dr. Hyla's opinions. Id. at 29.

Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." Social Security Ruling 12-2P, 2012 WL 3104869, at *2 (July 25, 2012) (hereinafter "SSR 12-2P, at *__"). SSR 12-2P sets forth and accepts the diagnostic criteria propounded by the American College of Rheumatology. Id. at *2–3. The ALJ accepted plaintiff's diagnosis of fibromyalgia, finding it to be a severe impairment.[4] However, the ALJ's reasoning establishes that he completely misapprehends the syndrome of fibromyalgia.

---

[4] Both Dr. Ram's and Dr. Hyla's treatment records establish multiple trigger point tenderness and widespread pain, supporting a fibromyalgia diagnosis. SSR 12-2P at *2–3.

- 9 -

While accepting the diagnosis, the ALJ rejected the treating physician's opinions as to severity because they were not supported by objective evidence. However, in fibromyalgia patients "physical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." Green-Younger, 335 F.3d at 108–09 (internal quotation omitted). Moreover, "[a]s a general matter, 'objective' findings are not required in order to find that an applicant is disabled." Id. at 108. Here Yates complained of not only widespread pain, but also fatigue, cognitive or memory problems ("fibro-fog"), sleep difficulties and waking unrefreshed, and anxiety. These are common manifestations or co-occurring conditions with fibromyalgia, SSR 12-2p at *3, which should be considered as part of the syndrome, rather than as separate diagnoses to be evaluated. The ALJ improperly considered them separately. For example, in support of his rejection of Dr. Hyla's opinion, the ALJ stated that Dr. Hyla opined that Yates was "disabled not on the basis of joint pathology but on the basis of her fatigue." R. at 28. Plaintiff suffered from fatigue because of the sleep disturbances characteristic of fibromyalgia, not "fatigue" as a separate condition. Moreover, as previously noted, joint pathology is generally not present with fibromyalgia. See Green-Younger, 335 F.3d at 108–09. Thus, the reasons given by the ALJ were insufficient to justify rejecting the treating physicians' opinions.

Further, although not mentioned by the ALJ in rejecting Dr. Ram's and Dr. Hyla's opinions, other medical evidence in the record supports these physicians' opinions. Dr. Kristen Barry performed a psychiatric evaluation in October 2007. R. at 221–25. Dr. Barry opined that Yates could maintain attention and concentration fairly well but may have difficulty handling stressor. Id. at 224. She felt plaintiff appeared able to make appropriate decisions. Id. She diagnosed plaintiff with adjustment disorder with depressed mood.

Dr. Kalyani Ganesh performed an orthopedic examination also in October 2007. Id. at 226–30. Dr. Ganesh found Yates had a normal gait, ability to rise from a chair without difficulty, dexterity intact in hands and fingers, and grip strength 5/5 bilaterally. Id. at 227. These normal findings are consistent with the normal clinical findings of Dr. Ram and Dr. Hyla. Dr. Ganesh also found limited extension of cervical spine, lateral flexion right 25 degrees and left full, rotary movements right 60 degrees and left full, and cervical pain with no spasm. Id. He determined that the thoracic and lumbar spines flexion was limited to 30 degrees, otherwise full flexion, extension, and rotary movements. Id. at 228. Dr. Ganesh found twelve tender points. Id. He diagnosed plaintiff with fibromyalgia, arthritis, migraines and herniated disc and stenosis of the cervical spine. Id. He opined that her prognosis was stable but guarded. Id.

The ALJ's rejection of Yates's treating physicians' opinons was based upon an erroneous legal standard and therefore is not supported by substantial evidence.[5] See Green-Younger, 335 F.3d at 109.

According to the Medical Source Statement completed by Dr. Ram on June 9, 2005, and reaffirmed on June 9, 2009, Yates's pain would be exacerbated by fatigue, movement/overuse, statis position, and stress. Id. at 302. Her pain would interfere with attention and concentration frequently, and she would be unable to tolerate even low work stress. Id. Dr. Ram opined that plaintiff could sit for 15 minutes without needing to get up and could stand for 15 minutes without needing to sit down or walk around. Id. at 302. She

---

[5] It is noted that even if the ALJ properly did not give controlling weight to the treating physicians' opinions, it is required that he consider certain factors, such as the length of the treatment relationship, in evaluating what weight to give to the medical sources, and set forth with specificity the reasons for the weight given. See Burgess, 537 F.3d at 129. The ALJ did not do so.

- 11 -

opined that plaintiff could sit or stand/walk less than 2 hours in an 8 hour work day, she would need unscheduled breaks daily, and her legs should be elevated 6 to 8 inches if she were in a sedentary job. Id. at 303. According to Dr. Ram, plaintiff could never lift and carry even less than ten pounds; could rarely twist, bend, crouch, and climb ladders; and could only occasionally climb stairs. Id. at 304. Plaintiff could grasp, turn, and twist objects half the time with each hand and perform fine manipulations with her fingers half the time with each hand. Id. She could not do any reaching. Id. Further, Dr. Ram opined that plaintiff would be absent from work due to her impairments more than four times a month. Id. at 304–05.

Dr. Hyla also completed a Medical Source Statement, on July 6, 2005. Dr. Hyla opined that Yates could tolerate a low stress job. Id. at 307. However, drowsiness caused by medication may impact her ability to work. Id. at 308. He opined that she would need a job that permits shifting positions at will from sitting, standing, or walking, and that she would need to take 1/3 to 1/2 hour unscheduled breaks two to three times per day. Id. According to Dr. Hyla, with a sedentary job plaintiff would not need to have her legs elevated. Id. at 309. She could frequently lift and carry less than 10 pounds, occasionally lift and carry 10 pounds, rarely lift and carry 20 pounds, and never lift and carry 50 pounds. Id. Dr. Hyla opined that plaintiff could occasionally twist and climb stairs, rarely bend and crouch, and never climb ladders. Id. He also opined that she could occasionally look down, turn head right or left, and look up; and could rarely hold her head in a static position. Id. According to Dr. Hyla, plaintiff could grasp, turn, and twist objects and perform fine finger manipulations eighty percent of an 8-hour work day, but could reach overhead only five percent of the time. Id. He opined that she would be absent from work due to her impairments more than four days per month. Id.

Giving controlling weight to the opinions of Yates's treating physicians Dr. Ram and Dr. Hyla, she would require unscheduled breaks two or three times per day and would miss four or more days of work per month. With these limitations, the vocational expert testified that there are no jobs in the national economy that plaintiff could perform. See id. at 65. Thus, there would be no purpose in remanding this matter for further proceedings. The decision of the Commissioner will be reversed and remanded for a calculation of disability benefits. See Green-Younger, 335 F.3d at 109.

### 2. Credibility

Similarly to his reasoning for rejecting the treating physicians' opinions, the ALJ found Yates less than credible because of the lack of objective findings. R. at 23–28. The ALJ noted lack of "significant clinical findings, . . . sporadically mild clinical findings, . . . clinical findings were overall normal, . . . normal clinical findings, . . . normal to mild findings, . . . trigger point tenderness . . . was the only abnormal finding, . . . [c]linical examination findings, however, were generally normal, . . . normal to mild clinical findings. . . claimant did not suffer from an inflammatory disease . . . generally normal physical examination" reported by Dr. Ram and Dr. Hyla. Id. at 23–25. He also noted normal findings from the consultative examiners Dr. Ganesh and Dr. Barry. Id. at 25. The ALJ further stated that after plaintiff's insured status ended on December 31, 2007, there were "generally minimal findings . . . overall normal clinical findings . . . laboratory testing was overall normal . . . x-rays of both knees and the lumbosacral spine were normal . . . normal to mild findings . . . sporadic mildly abnormal clinical findings . . . generally normal findings . . . generally normal to mild findings." Id. at 25–26. In addition, the ALJ noted that although plaintiff's treatment was somewhat inconsistent due to a lack of health insurance coverage, even "when she did receive

treatment, her health care providers reported normal to occasionally moderate findings." Id. at 27. As discussed above, the lack of significant clinical findings such as joint inflammation with a fibromyalgia diagnosis is an improper basis for a finding that plaintiff's reports of the severity of her symptoms are not credible. See Green-Younger, 335 F.3d at 109 (stating that "the absence of swelling joints or other orthopedic and neurologic deficits is no more indicative that the patient's fibromyalgia is not disabling than the absence of a headache is an indication that a patient's prostate cancer is not advanced" (internal quotation omitted)).

The ALJ also pointed out that Dr. Ram's clinical findings were not consistent over time. R. at 27. However, it is accepted that the symptoms of fibromyalgia "can wax and wane so that a person may have 'bad days and good days.'" SSR 12-2P at *6. Therefore, inconsistent symptoms is not a proper basis to discredit Yates's allegations as to the severity of her symptoms.

The ALJ considered the "fairly conservative" treatment Yates received in discounting her credibility. This also is an improper basis for discounting plaintiff's credibility. See Burgess, 537 F.3d at 128 ("The ALJ and the judge may not impose their respective notions that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered." (internal quotation omitted)); Green-Younger, 335 F.3d at 109.

In sum, each and every basis cited by the ALJ for undermining Yates's credibility is an improper basis to do so. Therefore, since the ALJ cited no proper factors on which he could find plaintiff less than credible, her allegations as to her disabling symptoms must be accepted. Taking into consideration plaintiff's allegations, the ALJ's determination of her RFC was not supported by substantial evidence. As set forth above given the treating physicians' opinions of her limitations as well as the plaintiff's own allegations of disabling

symptoms, there would be no purpose in remanding this matter for additional proceedings. Rather, it is appropriate to remand for calculation of benefits.

### 3. Vocational Expert

Based upon the foregoing analysis regarding the ALJ's errors in applying the treating physician rule and assessing Yates's credibility, plaintiff is correct that the hypotheticals upon which the vocational expert testified that there were jobs in the national economy she could perform were not reflective of her true functional limitations. Therefore, that testimony does not support a finding that plaintiff is not disabled.

## IV. CONCLUSION

The ALJ followed an improper legal standard in failing to give controlling weight to Yates's treating physicians. Giving Dr. Ram's and Dr. Hyla's opinions controlling weight leads inevitably to the conclusion that plaintiff is disabled. Moreover, the ALJ erred in his analysis of plaintiff's credibility. As the ALJ cited no proper basis for discounting her credibility, plaintiff's allegations of disabling symptoms must be credited. Therefore, the ALJ's determination of plaintiff's RFC is not supported by substantial evidence and the hypothetical upon which the vocational expert opined that work exists in the national economy that plaintiff could perform was not valid.

Accordingly, it is

ORDERED that

1. The plaintiff's motion for judgment on the pleadings is GRANTED;

2. The Commissioner's decision denying plaintiff disability benefits is REVERSED; and

3. This matter is REMANDED solely for calculation of benefits.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated: August 8, 2013
Utica, New York.